IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Raqib Abdul al-Amin, ) | C/A No. 0:21-2738-BHH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Charles Williams; Denis Patterson; ) | |
| Bryan Stirling, *Director of South Carolina* ) | |
| *Dept. of Corr.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, Raqib Abdul al-Amin, a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 against the named defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 31.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 32.) Plaintiff filed a response in opposition. (ECF No. 36.) Having reviewed the record presented and the applicable law, the court concludes that the defendants' motion should be granted as to Plaintiff's federal claims, and Plaintiff's state law claim should be remanded.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Plaintiff, to the extent they find support in the record. Plaintiff is an inmate housed at the Perry Correctional Institution ("Perry") of the South Carolina Department of Corrections ("SCDC"). On

---

[1] The defendants removed this action from the Greenville County Court of Common Pleas.

or around December 3, 2020, Plaintiff received information that an inmate named Curtis Waters had returned to Perry.  Plaintiff and Waters had a history of tension in which Plaintiff alleges Waters had falsely accused Plaintiff of violating the Prison Rape Elimination Act ("PREA").  Plaintiff alleges that he spoke with Sergeant Lindsay to confirm that Waters had indeed been returned to Perry and to inform her of the issues he had had with Waters two years before.  Sergeant Lindsay filed an incident report summarizing her conversation with Plaintiff in which she states that Plaintiff threatened to kill inmate Waters and that this statement was heard by two other officers.  Plaintiff insists that Sergeant Lindsay "misconstrued" his statements.  Regardless, Plaintiff was charged with threatening to inflict harm on an inmate.

As sworn by Clayton Holbrook of the SCDC Classifications Division, due to Plaintiff's posing a risk to institutional security and to inmate Waters's safety, as well as potentially protecting Plaintiff from inmate Waters, following the incident report on December 3, Plaintiff was placed in the Restricted Housing Unit ("RHU"), a high-security dormitory for inmates with documented disciplinary sanctions and inmates who pose documented security risks.  (Holbrook Aff. ¶¶ 3, 7, ECF No. 31-2 at 2-3.)  Plaintiff accepted an administrative resolution of the charge on December 9, 2020, thereby waiving his right to a disciplinary hearing, and was sanctioned to five days of disciplinary detention in the RHU.  Additionally, Perry staff submitted a separation request[2] to the Central Classification Committee for Plaintiff and Waters, as well as a request for Waters to be transferred to another correctional institution.

---

[2] According to Holbrook, a separation request is "a determination by the Central Classification Committee that it is unsafe or against penological interests to have one inmate housed at the same institution as the other, owing often to prior incidents of violence or victimhood of past incidents; even when a requested separation requirement is found invalid, the Central Classification Committee may still concur with a transfer of one of the prisoners subject to the separation request." (Holbrook Aff. ¶ 5, ECF No. 31-2 at 3.)

Plaintiff alleges that, after the conclusion of his five-day sanctioned detention in the RHU, he was informed that he had not been returned to the general population because a separation had been requested. (Am. Compl., ECF No. 14-1 at 5.) On December 17, 2020, the Central Classification Committee found the requested separation of Plaintiff and Waters to be "invalid," but concurred with the transfer request for Waters. Over the course of the next several weeks, Plaintiff filed multiple grievances and requests to staff regarding his continued detention in the RHU. Waters was transferred from Perry on March 3, 2021, and Plaintiff was released from the RHU on the following day, after ninety-one days of confinement in the RHU.

In his Amended Complaint, Plaintiff raises claims pursuant to 42 U.S.C. § 1983 of denial of due process in violation of the Fourteenth Amendment for his continued detention in the RHU, and of deliberate indifference to his conditions of confinement in violation of the Eighth Amendment. (Am. Compl., ECF No. 14-1 at 13.) Plaintiff also raises a state law claim of gross negligence. (Id., ECF No. 14-2.) Plaintiff seeks monetary damages. (Id., ECF No. 14-1 at 13.)

## DISCUSSION

**A.     Summary Judgment**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

    **1.     Fourteenth Amendment—Due Process**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff must satisfy the following two-part test to establish a procedural due process

violation: first, Plaintiff must demonstrate that he had a protected liberty interest in avoiding confinement in the restricted housing unit at Perry Correctional Institution; and second, Plaintiff must show that the defendants failed to afford him minimally adequate process to protect that liberty interest. See Smith v. Collins, 964 F. 3d 266, 274 (4th Cir. 2020).

Because Plaintiff is a convicted prisoner, he "does not have an inherent, constitutionally protected liberty interest in release" from the RHU. Id. at 275. Rather, Plaintiff must identify a state-created liberty interest in avoiding the RHU by showing first, "that there is a basis for an interest or expectation in state regulations for avoiding such confinement, and second, that the conditions impose atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Id. (internal quotation marks omitted). In his Amended Complaint, Plaintiff identifies SCDC policies that prescribe a review procedure to determine if an inmate's current segregation status remains appropriate or should be extended, which the defendants do not refute. (See Am. Compl., ECF No. 14-1 at 8); SCDC Policy OP-22.38 "Restrictive Housing Unit" § 1.3, 1.4, & 1.5.[3] Accordingly, the court concludes that Plaintiff has met the first prong in establishing a state-created liberty interest.[4] See Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2015) (finding that a state prison policy requiring a thirty-day administrative segregation review created a potential liberty interest).

Plaintiff next must show that the conditions in the RHU constitute an atypical and significant hardship compared to the "ordinary incidents of prison life," which in this instance

---

[3] To access this document, see https://www.doc.sc.gov/policy/policy.html (last visited Apr. 1, 2022).

[4] Although Plaintiff argues that these policies were not followed, the law is clear that violations of prison policies alone do not rise to the level of a constitutional deprivation. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992).

means the conditions of the general population. See id. This analysis "is a 'necessarily . . . fact specific' comparative exercise." Id. (omission in original) (quoting Beverati v. Smith, 120 F.3d 500, 502-03 (4th Cir. 1997)). Relying on the United States Supreme Court's reasoning in Wilkinson v. Austin, 545 U.S. 209 (2005), the Fourth Circuit "has construed the atypical-and-significant-hardship analysis as turning on primarily three factors: '(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence.' " Smith, 964 F.3d at 275 (quoting Incumaa, 791 F.3d at 530).

The first Wilkinson factor is the only factor that may weigh in Plaintiff's favor. With regard to his conditions, Plaintiff specifically alleges that he was kept in solitary confinement, that he did not have access to his address book, and that he was denied the opportunity to "use the one free five minute [telephone] call." (Am. Compl., ECF No. 14-1 at 5; Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 8-9.) The defendants concede that, due to security and penological interests, inmates in the RHU have restricted privileges compared to the general population, including restrictions regarding phone calls and personal belongings. (Holbrook Aff. ¶¶ 3-4, ECF No. 31-2 at 2.) Although not specifically mentioned by either party, the SCDC policy cited by Plaintiff regarding the RHU details restrictions to include, inter alia, strip searches whenever an inmate exits or enters his cell, and one hour of exercise per day for five days a week. See SCDC Policy OP-22.38 "Restrictive Housing Unit" § 17.1, § 25. To that end, Plaintiff's conditions in the RHU do not appear to be vastly different from those in Incumaa, which also involved an inmate housed within the Special Management Unit of an SCDC facility,[5] or the restrictive conditions described

---

[5] SCDC's RHU was formerly known as the Special Management Unit. See Goss v. Stirling, C/A No. 0:18-326-BHH-PJG, 2019 WL 10948725, at *8 n.5 (D.S.C. Dec. 17, 2019).

in Smith. See Incumaa, 791 F.3d at 521-22 (listing the restrictions in the Special Management Unit compared to those of the general population and finding the confinement conditions severe); see also Smith 964 F.3d at 272-73, 276 (finding the first Wilkinson factor weighed strongly in Smith's favor). However, the severity of the conditions alone is insufficient to create a liberty interest. See Wilkinson, 545 U.S. at 224. Moreover, the court finds Incumaa and Smith to be distinguishable to Plaintiff's confinement in the RHU because of the remaining two Wilkinson factors, discussed below.

As to the second Wilkinson factor, Plaintiff cannot prevail on a showing of indefiniteness of confinement in the RHU. Although, to be sure, Plaintiff's confinement ultimately was significantly longer than the five-day sanction in short-term segregation that Plaintiff resolved administratively, the defendants have put forth unrefuted evidence showing that the day following the incident, Perry staff submitted a separation request to the Central Classification Committee for Plaintiff and Waters, as well as a request for Waters to be transferred to another correctional institution. (Separation/Caution Memo., ECF No. 31-2 at 18.) Upon completion of Plaintiff's five-day detention in the RHU, Perry staff had not received a response from the Central Classification Committee, and was "unable to remove [Plaintiff] from the RHU due to inmate Waters' presence in the Perry general population." (Holbrook Aff. ¶ 10, ECF No. 31-2 at 3-4.) Holbrook testifies that "penological security and safety" are the ultimate goal, and that "[a]n inmate may be kept in the RHU if they continue to pose a threat."[6] (Id.) Perry staff received the

---

[6] Although Plaintiff argues that he was not a threat to Waters, this self-serving argument does not, without more, create a genuine issue of material fact. See, e.g., Poe v. Bryant, C/A No. 9:12-3142-RMG, 2013 WL 6158023, at *2 (D.S.C. Nov. 21, 2013) (citing Malik v. Sligh, No. 5:11-1064-RBH, 2012 WL 3834850, at *5 (D.S.C. Sept. 4, 2012), aff'd, 507 F. App'x 294 (4th Cir. 2013)) (finding that a plaintiff's self-serving contention that he submitted a grievance was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of the plaintiff's self-serving claims).

Central Classification Committee's response via email on December 21, 2020. (Email, ECF No. 31-2 at 8.) Despite finding the separation request invalid, the Central Classification Committee *concurred* with the transfer request for inmate Waters, and Holbrook testifies that the danger Plaintiff and Waters posed to each other "dictated the inability to remove Plaintiff from RHU while inmate Waters was in the general population." (Holbrook Aff. ¶¶ 11, 13, ECF No. 31-2. at 4.) To that end, the defendants provide testimony and other evidence demonstrating that Plaintiff remained in the RHU only until the day after inmate Waters was transferred, but that Waters's transfer was significantly delayed due the COVID-19 pandemic, which severely impacted SCDC's ability to promptly transfer inmates due to infection rates, testing, and quarantines. (Id. ¶¶ 12, 14.) The defendants also provide evidence that the Perry staff "affirmatively reached out in attempts to expedite Waters's transfer." (See, e.g., Email, ECF No. 31-2 at 7.) Accordingly, the record is clear that Plaintiff's detention in the RHU was not the type of indefinite period of confinement at issue in Wilkinson, nor was it remotely close to the twenty-year period of confinement at issue in Incumaa or even the four-year-and-three-month period of confinement in Smith. See Smith, 964 F.3d at 277 (finding that "courts have looked to the indefiniteness of solitary confinement, as well as its duration, in determining whether prisoners have a sufficient liberty interest in avoiding such confinement") (citing Incumaa, 791 F.3d at 531.) Accordingly, the second Wilkinson factor does not weigh in Plaintiff's favor.

Likewise, Plaintiff cannot prevail on the third Wilkinson factor, as he has failed to even allege, much less provide any evidence, that his confinement had any collateral consequences whatsoever on his sentence. In this regard, his case is readily distinguishable from Wilkinson and Smith. See Wilkinson, 545 U.S. at 224 (placement in the supermax facility disqualified an otherwise eligible inmate for parole consideration); Smith, 964 F.3d at 279-80 (inmate could not

earn good-time credits); see also Incumaa, 791 F.3d at 532 (finding third Wilkinson factor was not applicable because Incumaa was already ineligible for parole by virtue of his sentence).

Accordingly, after analyzing the Wilkinson factors, the court concludes that no reasonable jury could find that Plaintiff's conditions of confinement in the RHU at Perry imposed an atypical and significant hardship such that he had a protected liberty interest. See Wilkinson, 545 U.S. at 221, 224; Smith, 964 F.3d at 274-75.

2. **Eighth Amendment—Conditions of Confinement**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his claims under the Eighth Amendment, Plaintiff must demonstrate: (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

"The Constitution does not mandate comfortable prisons"; however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832 (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a

plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir .1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged conditions or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. Importantly, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The defendants argue that Plaintiff has failed to satisfy the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). In his Amended Complaint, Plaintiff primarily alleges mental and emotional injuries as a result of his confinement conditions, which do not satisfy the physical injury requirement of the PLRA. See 42 U.S.C. § 1997e(e). However, Plaintiff does allege two physical injuries while housed in the RHU: (1) that he lost

twenty pounds during the applicable time period; and (2) that he would injure himself as a result of his REM sleep behavioral disorder.  (Am. Compl., ECF No. 14-1 at 6-8.)

As argued by the defendants, Plaintiff's weight loss was the result of Plaintiff's self-imposed hunger strike, as admitted by Plaintiff himself in his Amended Complaint.  (See id., ECF No. 14-1 at 8.)  Although "[p]rison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death[,] . . . if weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern."  Owens v. Hinsley, 635 F.3d 950, 955 (7th Cir. 2011) (citation omitted).  Accordingly, Plaintiff's refusal to eat for approximately eleven days and his claims that he suffered from weight loss are insufficient to show a physical injury for purposes of a conditions of confinement claim.

With regard to Plaintiff's REM sleep behavioral disorder, Plaintiff alleges that the conditions in the RHU exacerbated the condition, causing an increase in the injuries sustained. Plaintiff does not provide any details regarding his sleep condition or the nature of his alleged injuries, but Plaintiff's medical records indicate that the sleep disorder caused Plaintiff to "punch, jump or scratch himself during his dreams."  (ECF No. 31-4 at 8.)  Other courts have held that self-inflicted injuries cannot serve as "physical injury" under the PLRA.  See Corbin v. Adams, C/A No. 6:19-CV-26, 2020 WL 3105954, at *2 n.1 (S.D. Ga. May 21, 2020) ("Plaintiff's act of cutting himself after [plaintiff] was placed in his cell on November 6, 2018 does not satisfy [the] physical injury requirement, as self-inflicted injuries cannot serve as a "physical injury" under 42 U.S.C. § 1997e(e)."), report and recommendation adopted by, 2020 WL 3105093 (S.D. Ga. June 11, 2020); Morrill v. Holmes Cnty. Jail, C/A No. 5:15-cv-324, 2018 WL 7082149, at *9 (N.D. Fla. Jan. 30, 2018) ("[T]he Court concludes that self-inflicted injuries do not, and cannot, rise to the

level of a physical injury under the PLRA."), report and recommendation adopted by, 2019 WL 280082 (N.D. Fl. Jan. 22, 2019); Argetsinger v. Ritter, C/A No. 08-cv-01990, 2009 WL 3201088, at *4 (D. Colo. Sept. 29, 2009) (holding that an inmate's self-inflicted injury did not amount to a "physical injury" under the PLRA, and noting that "allowing a self-inflicted injury to satisfy the physical injury requirement of § 1997e(e) would create a perverse incentive of self harm in prison populations"). Moreover, even if such self-inflicted injuries could satisfy the PLRA, Plaintiff has failed to demonstrate that these injuries are sufficiently serious to satisfy the objective component of his Eighth Amendment claim. De'Lonta, 330 F.3d 634; Strickler, 989 F.2d at 1381.

**C.    State Law Claim**

Plaintiff also appears to raise a state law claim of gross negligence that the defendants do not address in their motion for summary judgement. (See Am. Compl., ECF No. 14-2.) However, in light of the recommendation that the defendants' motion for summary judgment be granted as to Plaintiff's federal claims, the court should exercise its discretion to remand the state law claim to the Greenville County Court of Common Pleas. See 28 U.S.C. § 1367(c) (authorizing a district court to decline to exercise jurisdiction over a supplemental claim); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988) (discussing the factors in deciding whether to exercise supplemental jurisdiction after removal). In the interest of comity, Plaintiff's state law claim is more appropriate for consideration in South Carolina's courts because it includes complex issues of state law. See 28 U.S.C. § 1367(c) (listing bases for declining supplemental jurisdiction, including the presence of novel or complex issues of state law and the dismissal of federal claims); Hinson v. Nw. Fin. S.C, Inc., 239 F.3d 611, 617 (4th Cir. 2001) (finding the district court did not abuse its discretion to remand the case to state court where the federal claims were no longer at

issue, the state claims predominated, and the state claims involved interpretations of complex state statutes on which there was no state precedent).

## RECOMMENDATION

Based on the foregoing, the court recommends the defendants' motion for summary judgment be granted as to Plaintiff's federal claims and that Plaintiff's state law claim be remanded to the Greenville County Court of Common Pleas.  (ECF No. 47.)

April 1, 2022
Columbia, South Carolina

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).